# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANNA L. GARZON,<br>*Plaintiff,*<br><br>v.<br><br>NANCY A. BERRYHILL,<br>*Defendant.* | No. 3:18-cv-00799 (JAM) |

### ORDER REMANDING DECISION OF COMMISSIONER OF SOCIAL SECURITY

Plaintiff Anna Garzon asserts that she is disabled and unable to work due to several conditions. She filed this action pursuant to 42 U.S.C. § 405(g) seeking review of a final decision of defendant Nancy A. Berryhill, Acting Commissioner of Social Security, who denied Garzon's application for disability benefits. Garzon has filed a motion to reverse the Commissioner's decision (Doc. #22), and the Commissioner has filed a motion to affirm the Commissioner's decision (Doc. #24) For the reasons set forth below, I will grant the motion to remand and deny the motion to affirm the decision of the Commissioner.

### BACKGROUND

I refer to the transcripts the Commissioner provided. *See* Doc. #21-1 through Doc. #21-16. Garzon filed an application for social security disability income on March 24, 2016, alleging a disability beginning on February 2, 2016. Doc. #21-7 at 3-4. Garzon's claim was initially denied on July 6, 2016, Doc. #21-8 at 3, and denied again upon reconsideration on August 17, 2016, *id.* at 9. She then filed a request for a hearing on September 6, 2016. *Id.* at 12.

Garzon appeared and testified at a hearing in New Haven before Administrative Law Judge (ALJ) Eskunder Boyd on September 1, 2017. Doc. #21-6 at 44. Garzon was not represented by counsel. *Id.* at 46. On December 18, 2017, the ALJ issued a decision concluding

that Garzon was not disabled within the meaning of the Social Security Act. *See* Doc. #21-2 at 36. The Appeals Council denied Garzon's request for review on March 28, 2018. *Id.* at 2. Garzon then filed this case on May 10, 2018. Doc. #1.

To qualify as disabled, a claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and "the impairment must be 'of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quoting 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A)). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [a claimant] live[s] or in several other regions of the country," and "when there is a significant number of jobs (in one or more occupations) having requirements which [a claimant] [is] able to meet with his physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966(a)-(b); *see also Kennedy v. Astrue*, 343 F. App'x 719, 722 (2d Cir. 2009).

To evaluate a claimant's disability, and to determine whether he qualifies for benefits, the agency engages in the following five-step process:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed [in the so-called "Listings"] in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does

not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122-23 (2d Cir. 2012) (alteration in original) (citation omitted); *see also* 20 C.F.R. § 416.920(a)(4)(i)-(v). In applying this framework, an ALJ may find a claimant to be disabled or not disabled at a particular step and may make a decision without proceeding to the next step. *See* 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proving the case at Steps One through Four; at Step Five, the burden shifts to the Commissioner to demonstrate that there is other work that the claimant can perform. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

The ALJ concluded that Garzon was not disabled within the meaning of the Social Security Act. At Step One, the ALJ concluded that Garzon met the insured status requirements of the Social Security Act through December 31, 2021, and that she had engaged in substantial gainful activity from January of 2016 to February 1, 2017—a time period that extended past the date of her alleged onset of disability. Doc. #21-2 at 29. Because there was a time period after February 1, 2017, when Garzon had not engaged in substantial gainful activity, the ALJ continued his analysis as to that period. *Ibid.*

At Step Two, the ALJ found that Garzon experienced the following severe impairments: "Status Post Bilateral Knee Arthroplasty; Fibromyalgia (FM); Obesity; and Depressive Disorder." *Ibid.* The ALJ did not take note of any non-severe impairments. *Ibid.*

At Step Three, the ALJ determined that Garzon did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Ibid.*

The ALJ then found that Garzon "had the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she is able to stand and/or walk up to four hours and sit for six hours and she requires a sit/stand option defined as sitting for 30 minutes, alternate to the standing position for five minutes and then resume sitting. She is unable to climb ladders, ropes, or scaffolds but may occasionally climb stairs and ramps, balance, stoop, and crouch, but never kneel or crawl. She is able to frequently handle and finger. There should be no work with exposure to temperature extremes. The claimant is able to perform simple and detailed, but not complex tasks and she is able to sustain concentration, persistence, or pace for three to four hour segments with frequent interaction with coworkers and the public." *Id.* at 31-32. At Step Four, the ALJ concluded that Garzon could perform her past relevant work as an administrative clerk. *Id.* at 35. The ALJ then held that Garzon was not disabled within the meaning of the Social Security Act, and did not go on to make a Step Five finding. *Id.* at 36.

## DISCUSSION

Garzon claims that the ALJ did not fulfill his affirmative duty to develop the administrative record. Doc. #22-1 at 21-31. Garzon points out that following the hearing, the ALJ did not obtain certain medical records from her physician and social worker at the Shoreline Wellness clinic, largely did not obtain records from Yale-New Haven Health from after October 2016, and did not obtain records from Dr. Carlson, Garzon's treating rheumatologist, from after December 2015. *Id.* at 22.

It is well established that "[t]he ALJ, unlike a judge in a trial, must herself affirmatively develop the record" in light of "the essentially non-adversarial nature of a benefits proceeding." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). The ALJ, in other words, has a duty "to investigate and develop the facts and develop the arguments both for and against the granting of

benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011). This duty arises from the Commissioner's regulatory duty to develop a complete medical record before making a disability determination, 20 C.F.R. § 404.1512(d)-(f). "This duty is heightened for a *pro se* claimant." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018). Of course, the duty to develop the record is not limitless. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information . . . ." *Rosa*, 168 F.3d at 79 n.5.

Garzon argues that the ALJ determined her residual functional capacity without considering the opinions of Drs. Carlson, Puglisi, and Novella at Yale-New Haven Hospital. *See* Doc. #22-1 at 30. Garzon also argues that while the ALJ considered a "medical statement" from Kenneth Rando at Shoreline Wellness, *see* Doc. #21-2 at 34, the statement the ALJ considered was actually a short undated letter that contained no functional evaluation. Doc. #22-1 at 24. The Commissioner contends, however, that the ALJ made "every reasonable effort" to fill gaps in the administrative record, by virtue of having made both "an initial request and one follow up request" to Shoreline Wellness. Doc. #24-1 at 17. Moreover, the Commissioner argues, Garzon indicated to the ALJ that she had brought additional records from Yale-New Haven to the hearing, and the ALJ took every reasonable effort to help Garzon obtain the records she would later submit to the Appeals Council. *See ibid.* (citing Doc. #21-6 at 74).

The Commissioner's arguments are unpersuasive. To begin with, Shoreline Wellness's records indicate that while the Social Security Administration made an initial post-hearing request for records, *see* Doc. #21-2 at 59, and that Rando spoke with Garzon after the Social Security Administration "reported not receiving" Shoreline's records, *id.* at 62, the record does

not indicate whether the Social Security Administration had made that report to Shoreline Wellness, Garzon, or some third party.

The Commissioner also did not develop the record as to medical reports from Yale-New Haven. At the hearing, the ALJ stated that he was interested in Yale-New Haven records from October 2016 onward into 2017. *See* Doc. #21-6 at 71, 73. But the ALJ's decision did not reference any Yale-New Haven records from that time, instead relying on the records Garzon provided at the hearing that dated from 2013 to 2015. *See* Doc. #21-2 at 40-42; Doc. #21-6 at 71. The Commissioner does not point to any evidence in the record that the ALJ took any steps after the hearing to obtain Yale-New Haven records. At best, the hearing transcript does indicate that there may have been significant confusion at the hearing between Garzon and the ALJ as to whether Garzon had provided further records from Yale-New Haven. *See* Doc. #21-6 at 71-78. But when faced with inconsistent and ambiguous records, the burden is on the ALJ to request information for purposes of clarification. *See Prince v. Berryhill*, 304 F. Supp. 3d 281, 288 (D. Conn. 2018). Faced with ambiguous statements from an uncounseled claimant about whether any further records from Yale-New Haven existed, the ALJ here should have contacted Yale-New Haven to clarify and resolve the issue.

These failures to request medical information led to obvious gaps in the record. The ALJ had Yale-New Haven medical records at hand that dated through 2015, but focused his analysis on the time period starting in February 2017. *See* Doc. #21-2 at 29, 33. Indeed, the ALJ explicitly pointed to what he found to be deficiencies in the post-February 2017 medical records to conclude that "there is no evidence in the record that takes the claimant out of the scope of the physical portion of the residual functional capacity." *See id.* at 33. And the record shows that a

substantial number of medical records from Yale-New Haven existed for the post-February 2017 time period that the ALJ never considered. *See* Doc. #21-3; Doc. #21-4 at 1-56, 72-76.

It is of course true that the failure to consider a medical source statement does not require a remand when the record is otherwise complete, *see Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33–34 (2d Cir. 2013), but, as happened here, an ALJ may not rely on the absence of a medical opinion to determine a claimant is not disabled when the ALJ could have requested relevant medical records and did not, *see Guillen v. Berryhill*, 697 F. App'x 107, 108-09 (2d Cir. 2017). Accordingly, I conclude here that by failing to develop the record further, especially in light of Garzon's status as a *pro se* claimant, the ALJ left the record with obvious gaps. Because the ALJ relied on those gaps to determine Garzon was not disabled, I will remand the decision of the Commissioner. I therefore do not address Garzon's other claims of error, but note that on remand, the ALJ should be sure to consider any new information's impact on the combined effect of all the impairments Garzon experiences.

## CONCLUSION

For the reasons set forth above, Garzon's motion to reverse the decision of the Commissioner (Doc. #22) is GRANTED IN PART insofar as the Commissioner's decision is remanded, and the Commissioner's motion to affirm the decision of the Commissioner (Doc. #24) is DENIED. The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 20th day of May 2019.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge